UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-21426-CIV-LENARD/WHITE
(RELATED CRIMINAL CASE: 03-20294-CR-LENARD)

**DWELLY CAULEY**,

       Movant,

vs.

**UNITED STATES OF AMERICA,**

       Respondent.
_____/

**ORDER ADOPTING REPORT OF MAGISTRATE JUDGE (D.E. 25); DENYING MOTION UNDER 28 U.S.C. SECTION 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE (D.E. 1); AND DISMISSING CASE WITH PREJUDICE**

**THIS CAUSE** is before the Court on U.S. Magistrate Judge Patrick A. White's Report ("Report," D.E. 25), issued on November 8, 2007, recommending denial of Movant Dwelly Cauley's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Motion," D.E. 1), filed on June 5, 2006. On December 9, 2007, Movant, through hired counsel, filed Objections to the Report ("Objections," D.E. 28). The Court has conducted a de novo review of the Motion, the Report, the Objections, and the record, and finds as follows:

    **I.**     **Background**

The facts surrounding Movant's underlying conviction are taken from the Report and the Eleventh Circuit opinion denying his appeal from his conviction and are as follows. Confidential informant, Omar Somonte, was arrested for drug trafficking and cooperated

with the Drug Enforcement Agency. He used his past smuggling experience to coordinate a reverse sting operation in which no real drugs were used. He was introduced to Movant by Pedro Navarro, who wanted Movant to conduct a drug deal with Somonte in order to collect a debt which Movant owed Navarro from a previous deal. Navarro was later cut out of the deal.  Somonte met with Movant several times, during which he wore a wire and recorded their conversations. They discussed details of the off loading process, including how to position the shipping container which held the drugs so that its doors could be easily opened.

At the first meeting in February 1999, Somonte observed an unidentified white Mercedes repeatedly circle the area where the meeting took place. Movant also gave the names of port workers he would use in the deal, but said that he would not advise the workers about the deal prior to the transaction. He later agreed to hire a crew, and indicated in July that he was ready to go. Two days before the deal was to be executed, Somonte expressed concern about the reliability of the crew, which Movant assured him was trustworthy and would not steal the cocaine.

On August 14, 1999, Somonte met Movant, who was accompanied by two cars which arrived and left with him. Somonte gave Movant keys to a van and the number of the container containing the drugs. Movant called him later that morning and informed him that the crew did not want to work because of the heavy rain. Somonte responded that the deal would be easier to execute in inclement weather, but Movant refused to work until the weather cleared. That evening after the deal fell through, Somonte and DEA agent Rick

Lohse went to the port and found that the container which housed the sham cocaine had been specially positioned so that the doors could be easily accessed.

Movant was indicted and charged with conspiracy to import five or more kilograms of cocaine and conspiracy to possess with intent to distribute five or more kilograms of cocaine. He proceeded to trial by jury and did not testify. He called two witnesses on his behalf. A jury found him guilty as charged. The Court sentenced him to 262 months imprisonment, followed by five years of supervised release.

Movant appealed, arguing that the court improperly denied his motion for judgment of acquittal based on insufficiency of the evidence. On March 4, 2005, the Court of Appeals affirmed the conviction in a written but unpublished opinion. This timely motion to vacate ensued.

**II.     Report and Objections**

In his Motion, Movant makes ten claims for relief:

1. Counsel was ineffective for not presenting evidence that the shipping container containing the sham cocaine was never offloaded at the Port of Miami.

2. Counsel was ineffective for not objecting to the admission of FRE 404(b) evidence.

3. Counsel was ineffective for failing to request a jury instruction on withdrawal from the conspiracy and not arguing withdrawal as an alternate theory of defense.

4. Counsel was ineffective for failing to object to testimony that violated the Confrontation Clause.

5. Counsel was ineffective for failing to move to sever the indictment and failing to challenge the redacted indictment and the joinder of the defendants.

6. Counsel was ineffective for failing to advise him of his right to testify.

7. The government committed prosecutorial misconduct when it suggested that the jury could consider events that occurred prior to the conspiracy.

8. Counsel was ineffective for failing to object to sentencing entrapment resulting from the government's actions.

9. Counsel was ineffective for failing to raise Booker and Blakely arguments on appeal.

10. The combined effect of the above errors warrant vacating his conviction.

**A.    The Report**

The Magistrate Judge found that all ten of Movant's claims fail.

As to Movant's first claim, the Magistrate Judge found that, under the standard for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668 (1984), Movant cannot establish prejudice resulting from counsel's alleged failure to present additional evidence that the cocaine was not offloaded, as the Eleventh Circuit considered the evidence and found it to be sufficient to convict Movant; and, there is no reasonable probability that the jury would have acquitted Movant had such testimony been presented by counsel in light of the totality of the evidence presented at trial.

As to Movant's second claim, the Magistrate Judge found that his claim was belied by the record, which shows that counsel did, in fact, file a motion in limine to preclude cumulative, unfair, prejudicial evidence regarding an alleged 404(b) incident, and the

government proved that the evidence was relevant and similar to the conduct charged. Further, "In light of the evidence against Cauley, including the confidential informant's testimony and recorded conversations between the two of them, and the lawful introduction of the 404(b) evidence, there is no reasonable probability that the result of the trial would have been different but for counsel's performance." (D.E. 25 at 8.)

As to Movant's third claim, the Magistrate Judge noted that the Eleventh Circuit rejected Movant's argument on appeal that his crew's refusal to work in the rain on the scheduled date prevented formation of the conspiracy, because the government was not required to prove that the parties completed the conduct that formed the basis of the agreement in order to prove the existence of the conspiracy. "Thus, Cauley cannot establish prejudice, because the Court of Appeals found the evidence to be sufficient even in light of the failure to complete the conduct underlying the conspiracy." (Id. at 9.)

As to Movant's fourth claim, the Magistrate Judge found that there was neither deficient performance nor prejudice resulting from counsel's performance at trial because his counsel objected to the testimony that allegedly violated the Confrontation Clause and there is little likelihood that the result of the trial or the appeal would have been different but for trial or appellate counsel's assistance.

As to Movant's fifth claim, the Magistrate Judge found persuasive the government's argument that neither co-defendant was tried with Movant and their names did not remain in the indictment presented to the jury. Thus his counsel was able to press his argument that

5

Movant did not conspire with any non-government conspirators and therefore the government could not prove that a conspiracy occurred. Additionally, the Magistrate Judge found it significant that Movant's counsel requested and received a jury instruction advising the jury that neither government agents nor confidential informants can be considered co-conspirators. The Magistrate Judge further found that if any error occurred with regard to the indictment, the evidence against him was substantial and he had not demonstrated a reasonable probability that the result of his trial would have been different but for counsel's performance or that his conviction would have been vacated on appeal.

As to Movant's sixth claim, the Magistrate Judge found that an evidentiary hearing was not necessary to determine whether Movant was denied his constitutional right to testify on his own behalf because he could not demonstrate a reasonable probability that the jury would have rejected the substantial evidence against him and acquitted him based upon the testimony he proffered in the affidavit in support of the motion to vacate.[1]

---

[1] The Magistrate Judge found the following facts weighing strongly against a finding of prejudice:
> The jury heard evidence that Cauley met with the confidential informant Somonte on several occasions over a period of several months concerning the importation of half a ton of cocaine into the United States through the Port of Miami. The jury heard transcripts of conversations and saw videotapes of meetings that Cauley and Somonte concerning the logistics of the transaction. Transcripts of the tape recordings were provided to the jury. The jury heard Cauley advise Somonte on several occasions that he had a crew available to assist him with offloading the cocaine and that the shipping container had been set up for easy access and offloading of the shipment. Additionally, the jury heard testimony about Cauley's prior drug smuggling ventures, which was introduced to show Cauley's intent to participate in the smuggling venture with Somonte, his knowledge of what was necessary to effectuate such a venture, and his plan on how to conduct the smuggling venture. Fifteen tapes were introduced into evidence.

As to Movant's seventh claim, the Magistrate Judge found that the prosecutor's remarks were a fair comment on the testimony and were made in rebuttal to defense counsel's arguments.

As to Movant's eight claim, the Magistrate Judge found that, under Eleventh Circuit case law, a fictitious government-organized "reverse sting" operation involving a large quantity of drugs does not constitute sentencing factor manipulation.

As to Movant's ninth claim, the Magistrate Judge found that Movant's allegations regarding Booker and Blakely were bare and conclusory and thus insufficient to require a hearing or further consideration.

As to Movant's tenth claim, the Magistrate Judge found that, as Movant's individual claims were without merit, any argument as to the combined effect of the claims was also without merit.

**B.     Objections**

Movant's objections turn on his allegation that the DEA Special Agent in charge of the investigation of his alleged crime fabricated testimony about the fact that the container with sham cocaine had actually been unloaded from the freighter at the Port of Miami on August 14, 1999. Movant contends that, from this false fact, the agent then conjured a sequence of events from which he urged the jury to conclude that Movant must have had unknown co-conspirators.  Movant argues that the testimony of his co-defendants Humberto Paez and Ricard Caldera - which Movant's trial counsel did not introduce at trial - would

have established that the container was, in fact, not unloaded. Movant relies on the transcript of communications between Movant's co-defendants and the confidential source on the night of August 14, 1999, and the confessions of the co-defendants three years later. In the transcripts and the confessions, the co-defendants claim that they looked all over the Port of Miami that night and could not find the container. Based on these documents, Movant contends that the Special Agent must have perjured himself as to the off-loading of the container. Movant also contends that the government's failure to definitively refute his allegation must mean that it is true. Movant's conclusion appears to be that had this evidence been introduced and had Movant's trial counsel done a better job of proving that the special agent had perjured himself, there is a reasonable probability that he would have been acquitted.

Movant then argues that, as his conviction was based on perjured testimony, the remainder of his claims (specifically grounds two, four, five, six, and seven) gain added credibility and urgency.

**III. Discussion**

As an initial matter, in his Objections, Movant does not object to the Magistrate Judge's findings that he is not entitled to relief under his third, eighth, ninth, and tenth claims. Accordingly, the Court declines to address these claims. See 28 U.S.C. § 636(b)(1) (district court is only required to make "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made").

Regarding Movant's Objection that his conviction was invalid because the Special Agent perjured himself, this argument has two fundamental flaws.  First, Movant's claim that the Special Agent perjured himself is highly speculative and not credible. The Special Agent's testimony was corroborated at trial by the confidential source, Somonte, who testified that he participated in the offloading of the cocaine.  (Trial Transcript at 276-81.) Further, Movant's co-defendants' testimony that they could not locate the container does not prove that the special agent was lying; the only thing it proves is that his co-defendants claim that they were unable to find the container in the rain that night.  As presented and argued, Movant's speculative claim of perjured testimony is insufficient to warrant an evidentiary hearing on said claim.

Second, even if Movant's claim of perjury were true, it is not clear how the absence of this testimony, or the presentation of evidence that the containers had, in fact, not been unloaded, would have led to his acquittal.  As found by the Eleventh Circuit, Somonte testified that Movant repeatedly indicated that he was working with other people who would form his "crew" for the unloading of the drugs. (D.E. 121 at 8.)  Movant told Somonte that everything was "ready to go" and that he had a "good crew" which could be trusted not to steal. (Id.)  "From this testimony, the jury could reasonably infer that the defendant had entered into agreements with others to handle the drugs." (Id.)  Additionally, the jury held evidence that Movant had conspired with Pedro Navarro, that he had been accompanied by unknown persons in the white Mercedes during his meeting with Somonte in February, and

9

that he had been accompanied by unknown persons in two cars during the meeting Somonte in August. (Id. at 8-9.) Based on all of these facts, none of which have to do with whether the drugs were actually unloaded, it was reasonable for the jury to infer that Movant had conspired with at least one other person in assembling a crew to offload the drugs, and there is no reasonable probability that contrary evidence regarding the unloading of the cocaine would have led to his acquittal.[2]

As the remainder of Movant's Objections rely on his claim of perjured testimony, the Court finds that these Objections are similarly without merit. Accordingly, it is:

**ORDERED AND ADJUDGED** that:

1. The Report of the Magistrate Judge (D.E. 25) is **ADOPTED consistent with this opinion**.

2. Movant's Motion under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (D.E. 1), filed on or about June 5, 2006, is **DENIED**.

3. All pending motions not otherwise ruled upon are **DENIED AS MOOT**.

4. This case is **CLOSED**.

---

[2] It is also important to note that the allegedly perjured testimony was unnecessary to prove the government's claims of conspiracy: the government need not prove that the parties completed the conduct that formed the basis of the agreement to prove conspiracy. See United States v. Elledge, 723 F.2d 864, 866 (11th Cir. 1984).

**DONE AND ORDERED** in Chambers at Miami, Florida this 23rd day of October, 2008.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**